Appeal from a judgment of the Cattaraugus County Court (Ronald D. Ploetz, J.), rendered August 11, 2014. The judgment convicted defendant, upon a jury verdict, of welfare fraud in the fourth degree and offering a false instrument for filing in the first degree.
 

 It is hereby ordered that the judgment so appealed from is unanimously modified on the law by reversing that part convicting defendant of welfare fraud in the fourth degree and dismissing count one of the indictment, and as modified the judgment is affirmed.
 

 Memorandum: Defendant appeals from a judgment convicting her upon a jury verdict of welfare fraud in the fourth degree (Penal Law § 158.10) and offering a false instrument for filing in the first degree (§ 175.35 [1]). Defendant’s conviction stems from her receipt of a Section 8 housing subsidy financed by the United States Department of Housing and Urban Development (HUD) (see 42 USC § 1437f [b]; Matter of Malek v Franco, 263 AD2d 427, 428 [1st Dept 1999], lv denied 94 NY2d 762 [2000]). The Section 8 funds were administered by the Salamanca Housing Agency as a division of the Salamanca Industrial Development Agency, and were not administered through the Cattaraugus County Department of Social Services (DSS). The People established that defendant, who lived in New Jersey, obtained Section 8 benefits for housing in Salamanca, but she never lived in Salamanca during the five-month period during which she received benefits. The People’s theory was that defendant applied for and obtained the benefits in Salamanca because of the relatively short waiting list for Section 8 benefits in that area, but she did not intend to move there and instead intended to transfer her Section 8 subsidy to New Jersey under the federal portability rules after the expiration of the requisite one-year waiting period (see 24 CFR 982.353 [b], [c]).
 

 We reject defendant’s contention that a conversation among a juror, County Court, the prosecutor, defendant, and defense counsel constituted a mode of proceedings error, requiring reversal regardless of waiver or lack of preservation. The error was not a mode of proceedings error because it did not “ ‘go to the essential validity of the process’ ” and was not “ ‘so fundamental that the entire trial [was] irreparably tainted’ ” (People v Mack, 27 NY3d 534, 541 [2016], rearg denied 28 NY3d 944 [2016]). Here, we conclude that defendant waived her right to raise that contention on appeal inasmuch as both defendant and defense counsel participated in the conversation and defendant thus consented to manner in which the court responded to the juror’s questions (see People v Walker, 96 AD3d 1481, 1482 [4th Dept 2012], lv denied 20 NY3d 989 [2012]; see generally People v Webb, 78 NY2d 335, 339 [1991]).
 

 Defendant contends that her conviction of welfare fraud in the fourth degree is based on legally insufficient evidence because the Section 8 subsidy that she received did not constitute “public assistance benefits” under Penal Law § 158.10. We agree, and we therefore modify the judgment by reversing that part convicting her of that crime and dismissing the first count of the indictment. “A person is guilty of welfare fraud in the fourth degree when he or she commits a fraudulent welfare act and thereby takes or obtains public assistance benefits, and when the value of the public assistance benefits exceeds [$1,000]” (§ 158.10). Public assistance benefits are defined as “money, property or services provided directly or indirectly through programs of the federal government, the state government or the government of any political subdivision within the state and administered by the department of social services or social services districts” (§ 158.00 [1] [c]).
 

 Defendant contends that the statutory definition of public assistance benefits has two elements: first, the money, property, or services must be provided through either the federal government, the state government, or the government of any political subdivision within the state; and second, the money, property, or services must be administered by the department of social services or social services district. According to defendant, the second element must be established regardless of which entity (federal government, state government, or government of any political subdivision within the state) supplies the funds. Inasmuch as the Section 8 subsidy was not administered through DSS, defendant contends that she did not receive public assistance benefits, and thus she could not have committed welfare fraud in the fourth degree.
 

 The People, however, contend that the definition of public assistance benefits requires that the money, property, or services be provided through programs of (1) the federal government or (2) the state government or (3) the government of any political subdivision within the state and administered by the department of social services or social services district. In other words, the People interpret the statute such that the requirement that the funds be administered through a social services agency applies only to funds provided by “any political subdivision within the state” (Penal Law § 158.00 [1] [c]). We note that the People’s interpretation is supported by another subdivision of the statute, which defines a public benefit card as “any medical assistance card, food stamp assistance card, public assistance card, or any other identification, authorization card or electronic device issued by the state or a social services district . . . , which entitles a person to obtain public assistance benefits under a local, state, or federal program administered by the state, its political subdivisions, or social services districts” (§ 158.00 [1] [a] [emphasis added]). Thus, according to its definition, a public benefit card may be used to obtain certain types of public assistance benefits, i.e., those “administered by the state, its political subdivisions, or social services districts” (id.). That language indicates that public assistance benefits include funds administered by the state and “its political subdivisions,” in addition to funds administered by social services agencies. Therefore, defendant’s proposed interpretation that any funds constituting “public assistance benefits” must be administered through a social services agency cannot be harmonized with the statutory definition of a public benefit card. It is well settled that “ ‘[a] 11 parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof ” (People v Pabon, 28 NY3d 147, 152 [2016]).
 

 Nevertheless, defendant’s interpretation of the statutory definition of public assistance benefits is supported by the legislative history of the statute, which shows that it was enacted primarily to combat Medicaid fraud (see Governor’s Approval Mem, Bill Jacket, L 1995, ch 81 at 10), and Medicaid benefits are administered by the department of social services or social services district. In addition, we note that the People’s interpretation of the statute would extend its reach beyond its intended meaning to include any “money, property or services provided directly or indirectly through programs of the federal government,” without qualification (Penal Law § 158.00 [1] [c]). For example, under the People’s interpretation, veteran’s benefits would be “money, property or services” falling within the definition of “[pjublic assistance benefits” (id.), but it seems unlikely that the legislature intended the improper receipt of such benefits to be considered welfare fraud.
 

 We conclude that both interpretations of the statute are plausible. In such situations, the rule of lenity applies and we must adopt the interpretation of the statute that is more favorable to defendant (see People v Thompson, 26 NY3d 678, 687-688 [2016]). The People were therefore required to establish that the Section 8 funds were “administered by the department of social services” (Penal Law § 158.00 [1] [c]), which they failed to do. Instead, it is undisputed that the funds were not administered by DSS. The People contend that the crime of welfare fraud in the fourth degree should encompass defendant’s conduct because the overall goal of the statute is to combat fraud in social welfare programs, and fraudulent activities harm both the taxpayers and those truly in need of such benefits. As shown by the facts of this case, when defendant fraudulently obtained Section 8 benefits, that resulted in residents of Salamanca waiting longer for those benefits. The People’s contention, however, is one that should be directed to the Legislature.
 

 Defendant’s contention that she was denied a fair trial by prosecutorial misconduct is for the most part unpreserved for our review because she failed to object to the majority of the alleged instances of misconduct (see CPL 470.05 [2]; People v Diaz, 52 AD3d 1230, 1231 [4th Dept 2008], lv denied 11 NY3d 831 [2008]). In any event, we conclude that “ ‘[a]ny improprieties were not so pervasive or egregious as to deprive defendant of a fair trial’ ” (Diaz, 52 AD3d at 1231). We have considered defendant’s remaining contention and conclude that it is without merit.
 

 Present—Whalen, P.J., Centra, DeJoseph, NeMoyer and Winslow, JJ.